IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RAY FORRESTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 04 C 4424 |
| | ) | |
| | ) | HONORABLE CHARLES R. NORGLE |
| RAULAND-BORG CORP., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, Sr., District Judge

Fair warning: This Opinion contains x-rated emails that the Plaintiff sent to a female co-worker at Defendant's company. The excerpts contained in this Opinion are merely a sample of two separate emails, containing over 1,000 words that Plaintiff sent to the female co-worker. Plaintiff has alleged that he was fired for racial discrimination. Defendant states that he was fired for sexual harassment of female employees. Because the emails in question are essential to the court's determination of whether Defendant had legitimate, non-pretextual reasons for Plaintiff's termination, the court finds it necessary to include some graphic portions of these communications. See U.S. v. Bohanon, 290 F.3d 869 (7th Cir. 2002).

Before the court is Defendant's Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment brought pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the court grants Defendant's Motion for Summary Judgment, and denies Plaintiff's Motion for Summary Judgment.

1

# I. BACKGROUND[1]

## A. Facts

This case arises out of the employment relationship between Plaintiff Ray Forrester ("Forrester") and Defendant Rauland-Borg Corporation ("Rauland"). Forrester, an African-American, was employed at Rauland's corporate headquarters in Skokie, Illinois from January 1997 until his termination on July 21, 2000. Rauland is an international corporation that designs and manufactures a vast array of communication technology. See http://www.rauland.com (visited 11/8/05).

On January 28, 1997, Forrester began to work at Rauland as an electronics technician and held the title of "Technician AA." As a technician, Forrester's job was covered by a collective bargaining agreement ("CBA") between Rauland and Local 101 of the International Brotherhood of Electrical Workers ("IBEW"). The CBA contains a section which states that there shall be "no discrimination against any person for any reason whatsoever" and that "neither the Company nor the Union will tolerate any type of harassment or intimidation."

In addition to the CBA, Rauland has a written policy against sexual harassment, as well as a procedure for the investigation of sexual harassment complaints. Under this policy, complaints of sexual harassment are investigated by the company, and if the complaint is found to have merit, then the employee will face immediate discipline based on the severity of the incident. Rauland states that disciplinary action may include warnings, suspension, demotion, termination.

---

[1] The court takes the undisputed facts from the parties' Local Rule 56.1 Statements, and notes disputed facts within the text.

On January 17, 2000, Forrester was promoted to production supervisor in the Systems Assembly department. As a production supervisor, Forrester was no longer a member of the union, nor did he have a written employment contract. Rauland claims that Production Manager Mark Basich ("Basich") and Manufacturing Vice-President John Gutknecht ("Gutknecht") were responsible for Forrester's promotion. Basich became Forrester's direct supervisor.

Shortly after Forrester's promotion in January 2000, accusations of sexual harassment began to arise. In one instance, Kizza Cooke ("Cooke"), a mail attendant complained to supervisors at Rauland concerning certain sexual comments Forrester made to her. As a result of this complaint, Basich and Gutknecht met with Forrester to discuss the incident. Forrester was issued a warning to change his behavior and comply with the company's sexual harassment policy.

Then, on July 17, 2000, another production worker, Sullie Davis ("Davis") made an oral complaint of sexual harassment to Deborah Summers ("Summers"), Rauland's personnel administrator. Soon thereafter, Davis filed a written complaint pursuant to Rauland's sexual harassment policy. In her complaint, Davis claimed that Forrester made sexually-explicit comments to her on a routine basis, that she tried to avoid him, but Forrester would eventually find her. Additionally, Forrester sent Davis three sexually-graphic emails. Davis felt frightened, concerned for her safety, and claimed that this situation was affecting her work environment and health.

Upon receipt of this complaint, Gutknecht, Summers, and Maureen Pajerski ("Pajerski") formed a team to investigate Davis' allegations. As part of the investigation, the team interviewed Forrester, who they claim admitted to sending the sexually-explicit emails.

3

Additionally, Forrester provided them with copies of the emails. During the course of the investigation, a third, previously unreported sexual harassment claim was discovered, this time made by a female production employee, Tuhang Le ("Le").

On July 21, 2000, Norm Kidder ("Kidder"), Rauland's president and CEO met with Forrester to discuss the details of the ongoing investigation. Kidder claims that on that date, he terminated Forrester because of Forrester's repeated violations of Rauland's sexual harassment policy. Forrester claimed that he thought the women involved in the three harassment incidents were his friends, and that these allegations were due to misunderstandings. Specifically, Forrester alleged that Davis had requested the explicit emails, and the misunderstanding between Le and himself was a result of a language barrier.

Additionally, Rauland notes that in 1995, allegations of sexual harassment were made by a while female worker against Carl Cox ("Cox"), a white male who was the Vice-President and Director of Engineering. An investigation of that complaint revealed no evidence that Cox violate Rauland's sexual harassment policy.

## B. Procedural History

On July 2, 2004, Forrester filed his pro se one-count Complaint, alleging that his termination was a result of racial discrimination, a violation of Title VII. Then, on September 21, 2005, Rauland filed its Motion for Summary Judgment. Forrester filed his Response to Rauland's Motion and his Cross-Motion for Summary Judgment on October 20, 2005. On November 8, Rauland filed its Reply, as well as its Response to Plaintiff's Cross-Motion for Summary Judgment. Both parties motions are before the court.

4

## II. DISCUSSION

### A. Standard of Review

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Heft v. Moore, 351 F.3d 278, 283 (7th Cir. 2003), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Szymanski v. Rite-Way Lawn Maintenance Co., 231 F.3d 360, 364 (7th Cir. 2000); see also Vukadinovich v. Bd. of Sch. Tr.'s of North Newton School, 278 F.3d 693, 699 (7th Cir. 2002).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Stinnett v. Iron Works Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. See FED. R. CIV. P. 56(c); see also Koszola v. Bd. of Educ. of City of Chicago, 385 F.3d 1104, 1108 (7th Cir. 2004). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 280 (1968); Spiegla v. Hall, 371 F.3d 928, 935 (7th Cir. 2004). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

When a party moves for summary judgment, the court must view the record and all inferences in a light most favorable to the non-moving party. Ameritech Benefit Plan Comm. v.

Communication Workers of Am., 220 F.3d 814, 821 (7th Cir. 2000). However, the inferences construed in the non-moving party's favor must be drawn from specific facts identified in the record that support that party's position. See Szymanski, 231 F.3d at 364. Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hospital and Medical Center, 328 F.3d 890, 892-93 (7th Cir. 2003) (citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

## B. Title VII- 42 U.S.C. § 2000e

Pursuant to Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); see Whittaker v. Northern Illinois University, 424 F.3d 640, 645 (7th Cir. 2005). In order to prevail under on a race discrimination claim under Title VII, Forrester must "either show direct evidence of discriminatory motive or intent, or rely on the indirect burden-shifting method outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Bio v. Federal Express Corp., 424 F.3d 593, 596 (7th Cir. 2005).

Under the McDonnell Douglas method, a plaintiff who alleges racial discrimination must establish four elements: (1) that he is a member of a protected class; (2) that he was meeting his employer's legitimate performance expectations; (3) that he suffered an adverse employment action; and (4) that he was treated less favorably than similarly situated individuals who are not members of his protected class. See Ballance v. City of Springfield, 424 F.3d 614, 617 (7th Cir. 2005); Whittaker, 424 F.3d at 645.

Once the plaintiff has established a prima facie case, the burden shifts to the defendant to

provide a legitimate, non discriminatory reason for the decision. <u>Ballance</u>, 424 F.3d at 617. If the defendant satisfies its burden, the burden shifts back to the plaintiff to show that the defendant's explanation was pretextual. <u>Id; Bio</u>, 424 F.3d at 596. To establish pretext, the plaintiff may show that the reasons given by the employer are factually baseless, were not the actual motivation for the decision, or were insufficient to motivate the decision. <u>Stewart v. Henderson</u>, 207 F.3d 374, 376 (7th Cir. 2000). The failure to establish any one of the initial four elements defeats a plaintiff's discrimination claim. <u>Id</u>. With these principles in mind, we turn to the parties' Motions for Summary Judgment.

## C. Forrester's and Rauland's Motions for Summary Judgment

### 1. Forrester has not established a prima facie case of racial discrimination

Forrester has not presented the court with any evidence of direct discrimination. "Direct evidence is evidence which in and of itself suggests that someone with managerial authority was 'animated by an illegal employment criterion.'" <u>Walker v. Bd. of Regents of the Univ. of Wisconsin</u>, 410 F.3d 387, 394 (7th Cir. 2005) (quoting <u>Sheehan v. Donlen Corp.</u>, 173 F.3d 1039, 1044 (7th Cir. 1999)). Such evidence is typically related to "the motivation of the decisionmaker responsible for the contested decision." <u>Id.</u> This evidence can be "interpreted as an acknowledgment of discriminatory intent by the defendant or its agents." <u>Id.</u> (quoting <u>Troupe v. May Dept. Stores</u>, 20 F.3d 734, 736 (7th Cir. 1994)). In the instant case, Forrester has provided no documents, statements, or other materials that would give rise to any direct evidence of discrimination. Therefore, he must proceed under the <u>McDonnell Douglas</u> burden shifting method.

As a preliminary matter, neither party disputes that Forrester, as an African-American, is a member of a protected class and that his termination constitutes an adverse employment action. See Whittaker, 424 F.3d at 645; Washington v. Illinois Dept. of Revune, 420 F.3d 658, 659-60 (7th Cir. 2005) (discussion of adverse employment actions).

However, the parties dispute whether Forrester has established the third and fourth prongs of the McDonnell Douglas test. Rauland claims that under the third prong, Forrester did not perform his job in a satisfactory manner. As soon as Forrester was promoted in January 2000, the was accused of sexual harassment. According to Rauland, an employee who sexually harasses a co-worker violates the company's policies, and therefore is not performing his job satisfactory. See Def.'s Mot. for Summ. J., at 7. Rauland claims that it conducted a full and thorough investigation in accordance with its written sexual harassment policy. Id. at 3. The people who investigated these claims interviewed the female workers, and discovered the sexually-explicit emails that Forrester wrote to Davis. Id. at 4. Forrester offers no opposing evidence to dispute Rauland's claim that he violated the sexual harassment policy.

Alternatively, Forrester alleges that he never sexually harassed any female co-workers, and the complaints filed against him are either false or fabricated. See Pl.'s Resp., at 7-8. In regards to the Davis complaint, Forrester claims that he contemplated selling his erotic writings to various adult publications and websites. Def.'s Resp., at 3. However, the extremely sexually graphic context of the emails are directed towards Davis specifically. In an email sent on March 1, 2000, Forrester writes "I turn you over on your back and start sucking your nipples. They are so hard, you are moaning softly. Your breasts are so sensitive. It drives you crazy to feel my tongue sliding around your nipples." Def.'s Mot. for Summ. J., Ex. 12. In a second graphic

8

email dated March 9, 2000 sent to Davis, Forrester states that "[W]ell here's the latest installment. Read it before you go to bed, and after you read it I want you take off all your clothes and lay on the bed and think about me fucking you while you play with your pussy because I know its going to be nice and wet and you're going to be wishing you had me and my hard dick right there." Id. Furthermore, Forrester signed the email "I love you, Ray." Id. Both emails go on to elaborate in graphic detail various sexual acts Forrester proposed to perform with Davis. Such language and tone refutes Forrester's claim that these letters were meant solely for publication in adult web-sites and publications. Forrester's unsubstantiated claim that he "did not violate Rauland's sexual harassment" policy, without supporting evidence, does not create a genuine issue of material fact. See Whittaker, 424 F.3d at 645.

Forrester's Title VII claim also fails because he cannot satisfy the similarly situated prong of the McDonnell Douglas test. A similarly situated employee "is one who is 'directly comparable to the plaintiff in all material aspects.'" Bio, 424 F.3d at 596 (quoting Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002); see Walker, 410 F.3d at 396 (quoting Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000)). To determine whether two employees are similarly situated, the court must "look at all relevant factors, including whether the employees "(i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications– provided the employer considered these latter factors in making the personnel decision.'" Bio, 424 F.3d at 596 (quoting Ajayi v. Aramark Bus. Servs., Inc., 336 F.3d 520, 532 (7th Cir. 2003)).

9

None of the Rauland employees are similarly situated to Forrester. Forrester states that Cox, a vice president at Rauland, had a sexual harassment complaint filed against him in 1995 yet was not terminated, as a result of an investigation of the claim. However, under the similarly situated analysis, these two employees do not share any similar characteristics. The Seventh Circuit instructs us that two employees are similarly situated if "they are directly comparable to [plaintiff] in all material respects." Walker, 410 F.3d at 396 (quoting Patterson, 281 F.3d at 680).

First, Cox had a different job than Forrester. Cox was a member of the company's senior management, and the Director of Engineering. Forrester, on the other hand, worked as a production supervisor. Second it is undisputed that both Forrester and Cox were subject to the same standards under Rauland's sexual harassment policy. Third, Cox and Forrester reported to different subordinates. Forrester reported to Basich and Gutknecht, while Cox reported to the corporate board of directors. Lastly, Cox and Forrester had different work experience and background. Forrester worked in the manufacturing and labor sector, while Cox was a white-collar employee. Furthermore, Forrester has not presented any evidence or material to show that any other employee wrote or sent the kind of messages he did, or that the content was the same or substantially similar. Viewing all of these factors together, Forrester cannot establish that he and Cox are similarly situated for purposes of a Title VII claim, and therefore his Title VII case is doomed. See Stewart, 207 F.3d at 376; see also Racicot v. Wal-Mat Stores, Inc., 414 F.3d 675, 678 (7th Cir. 2005). As a result, summary judgment is proper in favor of Rauland. See Szymanski, 231 F.3d at 364.

10

## 2. Legitimate Reason for Termination

Even though Forrester has not established a prima facie case for discrimination under Title VII, with an abundance of caution, the court will proceed with the remaining McDonnell Douglas analysis. Assuming, arguendo, that Forrester has established a prima facie case of discrimination, the burden shifts back to Rauland to establish a legitimate, non-discriminatory reason for Forrester's termination. See Ballance, 424 F.3d at 617. Here, Rauland has stated that it fired Forrester after several warnings in regards to the company's sexual harassment policy. See Def.'s Mot. for Summ. J., at 11. There is no evidence in the record that suggests Rauland had a discriminatory motive when it terminated Forrester's employment. Moreover, Forrester admitted that he had not experienced any racial discrimination on the job prior to his termination. Forrester Dep., at 21.

In addition to the emails sent to Davis, two other employees accused Forrester of sexual harassment. In one instance, Cooke stated that at the office Christmas party, Forrester commented that "[Y]ou were pretty drunk at the Christmas party. I'm sure your date got lucky." Id. at 57. As a result of this statement, Forrester met with Gutknecht and Basich to discuss Rauland's sexual harassment policy and the need for discretion among fellow co-workers.

Additionally, Le complained that Forrester had propositioned her for sex. Forrester claims that he told Le that she looked very nice and that "I'd want you." Id. at 73. Furthermore, Forrester alleges that when Le asked what was in it for her, Forrester responded "20 bucks." Id. at 74. When she did not laugh at that statement, Forrester said, "[A]ll right, all right, no problem. 100 dollars." Id. It was after this interaction that Le complained to management about Forrester's behavior. Forrester claims that this was simple misunderstanding due to the language

and cultural differences between Vietnamese and Americans. See id. However, these three examples of sexual harassment are evidence that Rauland did not fire Forrester because of his race, but as a result of his constant violations of the company's sexual harassment policy. "An employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Rudin v. Lincoln Land Comm. Coll., 420 F.3d 712, 725 (7th Cir. 2005) (quoting Stockett v. Muncie Indiana Transit Sys., 221 F.3d 997, 1001 (7th Cir. 2000)).

### 3. Pretext Argument

Lastly, after Rauland has established its legitimate reason for termination, Forrester is required to show that the proffered reason is pretextual. See Stewart, 207 F.3d at 376; see also Herron v. DaimlerChrysler Corp., 388 F.3d 293, 301 (7th Cir. 2004). "The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." Stewart, 207 F.3d at 378 (quoting Jackson v. E.J. Brach Corp., 176 F.3d 971, 983 (7th Cir. 1999)). The court will not "sit as a superpersonnel department that reexamines an entity's business decision and reviews the propriety of the decision." Id. Moreover, it is not sufficient to prove that the reason was doubtful or mistaken. Crim v. Bd. of Educ. of Cairo Sch. Dist. No. 1, 147 F.3d 535, 541 (7th Cir. 1998). Pretext does not mean simply a mistake, but instead a lie, "specifically a phony reason for some action." Id. (quoting Johnson v. City of Fort Wayne, 91 F.3d 922, 931 (7th Cir. 1996)). The only concern is whether the legitimate reason provided by the employer is in fact an honest one. See Stewart, 207 F.3d at 378.

Here, Forrester has not submitted any evidence to demonstrate that Rauland's legitimate, non-discriminatory reason for his termination was pretextual. See Jansen v. Packaging Corp. of

Amer., 123 F.3d 490, 493 (7th Cir. 1997) (employee presented no evidence that the reasons for termination were mere pretexts, therefore the employer was entitled to summary judgment). Forrester admitted that he was aware of the company's sexual harassment policy, admitted to sending the sexually explicit emails to Davis, and admitted to making sexually inappropriate comments to Cooke and Le. See Forrester's Dep., at 12, 57-58, 72-74. Forrester has not established a genuine issue of material fact as to whether Rauland's purpose for his termination was "honest." See Stewart, 207 F.3d at 378. Nor has Forrester submitted evidence that suggests a phoney reason or a lie to justify his termination. See Crim, 147 F.3d at 541. Therefore, because Forrester cannot establish a pretextual reason for his termination, summary judgment is appropriate in favor of Rauland.

### III. CONCLUSION

For the foregoing reasons, the court grants Defendant's Motion for Summary Judgment, and denies Plaintiff's Motion for Summary Judgment.

IT IS SO ORDERED.

ENTER:

_____

CHARLES RONALD NORGLE, SR. Judge

United States District Court

DATED: _11-16-05_

13